188 So.2d 766

Dorsey J. POWELL, d/b/a Mobile-Bayou La Batre Bus Lines,

v.

Judy Ann Spitzer GOFORTH.

Dorsey J. POWELL, d/b/a Mobile-Bayou La Batre Bus Lines,

v.

John W. SPITZER, Sr.

1 Div. 127, 128.

Supreme Court of Alabama.

June 30, 1966.

Inge, Twitty & Duffy, Mobile, for appellant.

Cunningham & Bounds, Mobile, for appellees.

GOODWYN, Justice.

Dorsey J. Powell, individually and doing business as Mobile-Bayou La Batre Bus Lines, brings each of these two appeals from a judgment rendered on a jury verdict against him in each of two separate cases which were tried together and submitted here on one record. One of the suits was brought by appellee Judy Ann Spitzer Goforth to recover for personal injuries allegedly sustained by her while a passenger on one of appellant's buses. The other was brought by her father, appellee John W. Spitzer, Sr., to recover for the loss of her services and earnings and for recovery of medical expenses incurred by him in and about the care and treatment of her alleged injuries.

Powell also appeals in each case from the judgment overruling his motion for a new trial.

Our conclusion is that none of the assignments of error argued and insisted on by appellant constitutes reversible error. The argument deals with the following alleged errors, in the following order, viz:

I. The prejudicial injection of insurance in the trial of the case, over appellant's objections.

II. The refusal of appellant's requested written affirmative charge with hypothesis in each case.

III. The overruling of appellant's demurrer to the complaint in each case.

IV. The giving of appellees' requested written charge No. 4.

V. The giving of appellees' requested written charge No. 2.

VI. The refusal of appellant's requested written charge No. 33.

VII. The denial of appellant's motion for a new trial in each case on the ground that the verdict of the jury was contrary to the great weight of the evidence.

Mrs. Goforth, when injured, was a passenger on one of appellant's buses traveling on Government Street, in the City of Mobile, in the right or curb lane of traffic. When the bus arrived near a street intersection an automobile in the traffic lane to the immediate left of the bus, and traveling in the same direction, turned suddenly into the path of the bus, apparently for the purpose of entering the intersecting street. When this happened, the bus driver brought the bus to an immediate stop, resulting in Mrs. Goforth's fall from her seat and receipt of her claimed injuries. There was no collision between the bus and the automobile; and the driver of the automobile was not ascertained.

*I*

The first question argued, and the one which has given the most trouble in resolving, concerns the claimed prejudicial injection in the case of appellant's coverage by insurance. Two of the instances consisted of references to an insurance agent or adjuster in answers to questions on the direct examinations of Mrs. Goforth and the bus driver, who was called as one of her

witnesses. The other instances followed the introduction in evidence by the defendant, on cross-examination of the bus driver, of a written statement signed by the bus driver shortly after the accident, which, in some respects, was in conflict with his testimony on direct. This statement was witnessed by "A. U. Bevelle."

On Mrs. Goforth's direct examination, the following occurred:

"Q. All right. When you got to the bus station, what if anything took place?

"A. Well, we got off the bus and went into the bus station and they called the insurance agent, I guess he was, and he came over and made a statement of the accident, and had me sign it."

Appellant moved to exclude the answer with respect to the insurance agent and also for a mistrial. The motion was denied, but the court instructed the jury as follows:

"Gentlemen of the jury, the issues in this case are going to center around the question of simple negligence. The matter of liability insurance, the statement that the young lady made has absolutely no place in this case. You took an oath as jurors that you would try the issues submitted. That has nothing to do with the case whatsoever. I ask you to disregard that statement by the witness in its entirety. Give no consideration to it whatsoever. Abide by your oath that you took when you said that you would try the case. Try it on the issues as made by the pleadings in the case. Go ahead."

On plaintiffs' direct examination of the bus driver, the following occurred:

"Q. Mr. Teal, after this incident took place there on Government Street, did you follow the automobile that had turned in front of your bus?

"A. Right.

"Q. All right. Did you get the license number of that automobile?

"A. Yes.

"Q. All right. Who got it for you or how did you get it?

"A. The girl that was riding on the bus. There was only two people on the bus. Miss Spitzer and the other one, I don't know what her name was, she got the license number for me.

"Q. Did she give it to you?

"A. Gave it to me and followed the car and watched where it parked.

"Q. You followed the car and watched where it parked?

"A. Right.

"Q. All right. Did you get any other information relating to that automobile?

"A. I got the type automobile it was.

"Q. What did you do with that information?

"A. I give it to the insurance adjuster or Mr. Powell, one, or both of them."

On objection by the defendant to this mention of the "insurance adjuster," the trial court instructed the jury as follows:

"THE COURT: Gentlemen, I'll charge you again, under the import of your oath, we are not trying this case on the issue of insurance. It has come out in the case, but I believe that you can disregard it and try the case on the issue of whether or not the defendant is guilty of negligence. It is not a question of ability or inability if you should—I mean, inability or ability to pay. It is a question of negligence. It hurts the Court's pride, if the Court can have pride, to think that such a matter would be injected into a case of this kind to influence men of good will in a decision that they are called on to try fairly and impartially. Now, disregard any matter of insurance and if any one of you feel that you cannot do it then let the Court know it now. I feel that you can do it, but if you can't then make it known to me and I'll then make my ruling on it. With that admonition to

the jury of this matter I am going ahead with the case."

We are unable to say, with any degree of assurance, that the trial court's prompt and clear instructions did not counteract the prejudicial tendency or effect of the injection of insurance by these answers. In other words, such prejudice as might have resulted from them was not incurable. In view of the trial court's instructions, we are not willing to hold it was reversible error to deny defendant's motions for a mistrial and a new trial, especially since the evidence was amply sufficient to justify verdicts for the plaintiffs, and the amounts awarded cannot be regarded as excessive.

On redirect examination of the bus driver and on cross-examination of one of defendant's attorneys, after the bus driver's written statement was introduced in evidence by the defendant for the purpose of impeaching the bus driver, it was brought out, over defendant's objections, that the bus driver's statement was written by an insurance adjuster.

In the closing argument of plaintiffs' attorney, the following statement was made: "Mr. Hudson testified here and we haven't heard a word from Mr. Bevelle, the insurance man who was—." The defendant objected to this argument, but not on the ground of the prejudicial injection of insurance. The objection was sustained.

The question presented with respect to the evidence concerning the preparation of the bus driver's statement may be stated as follows: Where, on cross-examination of plaintiff's witness, defendant's counsel introduces in evidence, for the purpose of impeaching the witness, a statement signed by the witness, is it error, on redirect examination of the witness, to permit him to show, over defendant's objection, that the statement was prepared by a representative of defendant's insurance carrier?

While we do not find where this question has been dealt with specifically in this jurisdiction, there are cases which lend a measure of support to the giving of an affirmative answer to it. For instance, in Hinton & Sons v. Strahan, 266 Ala. 307, 313, 96 So.2d 426, 431, it is said:

"* * * [I]t is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice or partiality concerning the matters about which he is testifying. Alabama Power Co. v. Gladden, 237 Ala. 527, 187 So. 711; 19 [A] Ala.Dig., Witnesses, ☞363(1), 370(1). It has been specifically held that the connection of a witness with a company carrying liability insurance may be shown as tending to show bias on the part of the witness, Pittman v. Calhoun, 231 Ala. 460, 165 So. 391; Hunt v. Ward, 262 Ala. 379, 79 So.2d 20, and commenting on the fact in argument does not constitute reversible error. J. H. Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46. See Annotation 4 A.L.R.2d 775, § 5. * * *"

It seems to us that when there is a difference between the testimony given by a witness on the stand and the witness' signed statement, which was prepared by someone else, and the statement is placed in evidence for the purpose of impeaching the witness, the jurors, in order that they may properly weigh the witness' testimony, have the right to know in whose behalf the one who prepared the statement was acting, with the extent of such inquiry resting largely in the discretion of the trial court. And we see no basis for saying that this rule should not have application when the person preparing the statement was acting for a party's insurance carrier. Bearing on this is the following from Brusletten v. Relyea, 207 Minn. 375, 291 N.W. 608, 609:

"* * * The rule is that when a witness is impeached on cross examination by the introduction of a writing signed by the witness the circumstances

under which the signature was affixed may be shown on redirect to affect or explain away the force of the impeachment. * * * But the extent to which the party, whose witness is thus impeached by a pleading verified by the witness, may go on redirect to explain the circumstances under which the verification was made, rests largely in the discretion of the trial court. * * *"

From Williams v. Matlin, 328 Ill.App. 645, 66 N.E.2d 719, 720, is the following:

"On cross-examination of plaintiff's husband the defendant submitted to him a statement prepared by an investigator, for the purpose of impeaching the witness. On redirect examination, in answer to a question by plaintiff's counsel as to who wrote the statement, the witness replied that it was written by one of the men representing the Chicago Motor Club. Defendant objects that this was an improper injection of the insurance company into the case. This objection is not tenable. Here the defendant sought to take advantage of an alleged impeaching statement signed by plaintiff's witness but prepared and obtained by an agent of the insurer. The identity of the person preparing the statement, the nature of his employment and by whom employed became material for the purpose of showing his interest, in any, in the litigation. As said in Gegan v. Kemp, 302 Mich. 218, 225, 4 N.W.2d 525, 527, cited by defendant, in discussing a similar situation: 'There can be no question but that after defendant introduced the statement prepared by the adjuster and witnessed by him, plaintiff had a right to show the circumstances under which the statement was made, who prepared it and what interest he had in it. * * *"

For statement of the general rule, see: 98 C.J.S. Witnesses § 422, pp. 229, 232; Anno. 4 A.L.R.2d 761, 782, § 9.

## II and VII

■ As we view the evidence, a typical jury question was presented on the issue of defendant's negligence. The trial court's denial of defendant's motion for a new trial lends strength to this conclusion. We see no good purpose to be served by discussing the evidence in detail. It is sufficient to note the bus driver's testimony that the brakes of the bus were not in good order and that "I throwed it in gear and stopped it."

## III

■ The complaints in both cases are basically the same and, for purposes of this opinion, will be considered as one.

The gravamen of the complaint is as follows:

"* * * Defendant was in the City of Mobile, State of Alabama, engaged in the business of operating a Bus Company as a common carrier of passengers for hire or reward, and on, to-wit, said day and date Defendant so negligently conducted its business that by reason thereof and as a proximate result and consequence thereof Plaintiff, who was then and there a passenger of the Defendant, received personal injuries in this, * * *."

Appellant argues that "there is no allegation as to how or in what manner appellant was negligent in the conduct of its business, whether it might have been negligent in the management of its records and ledgers or negligent in the handling of its payroll," thus rendering the complaint legally insufficient.

In Armstrong v. Montgomery Street Railway Co., 123 Ala. 233, 244, 26 So. 349, 351, it was held that a count quite similar to the complaint now before us sufficiently averred a cause of action for the negligence of the defendant, and was not demurrable on account of the generality of its averments of negligence. As there said:

"The first count avers that plaintiff's intestate was a passenger on one of defendant's street cars when he received the injuries which caused his death, and

thereby shows the duty the defendant was under to conserve the safety of the intestate. This duty having been thus shown, the averment of a failure to perform it (of the negligence of defendant whereby the intestate came to his death), though very general, viz.: 'said defendant then and there so negligently conducted said business that by reason of such negligence plaintiff's intestate received personal injuries which caused his death,' was quite sufficient under the rule that has been long established and has been many times reaffirmed in this court. (Citations omitted) * * * The demurrer to this count, for the generality of its averment of negligence, should have been overruled."

To the same effect are Alabama Power Co. v. Carroll, 208 Ala. 426, 427, 94 So. 743; Birmingham Ry., Light & Power Co. v. McCurdy, 172 Ala. 488, 490–492, 55 So. 616.

Appellant places reliance on Birmingham Electric Co. v. Shelton, 231 Ala. 110, 163 So. 633, where approval was given a complaint alleging that the defendant negligently operated the street car on which the plaintiff was a passenger. In giving approval to this count the court did not change the holding in Armstrong v. Montgomery Street Railway Co., supra, but cited it as authority for the rule applicable in suits against common carriers. We find no instance where the holding in *Armstrong* has been departed from.

*IV*

█ The plaintiffs' given charge No. 4 is as follows:

"The Court charges the Jury that if you are reasonably satisfied from the evidence in this case that the Defendant failed to exercise the highest degree of care, skill and diligence which the law imposes on it, and as a proximate consequence of that failure, Judy Ann Spitzer suffered an injury, she would be entitled to recover, if you are reasonably satisfied that she was a passenger and was injured as alleged."

Appellant argues that it was error to give this charge because the degree of care which the law imposes on it is not set out but is left to the jury for determination.

The giving of this charge might well have been refused for this reason. But giving it was not reversible error. In dealing with a similar situation in Alabama Power Company v. Smith, 273 Ala. 509, 524, 142 So.2d 228, 242, this court said:

"If, however, Charges 12 and 13 be deemed incomplete and, therefore, misleading, giving them was not reversible error. 'It is not necessarily reversible error to give ambiguous or misleading charges; proper explanatory instructions should be given at request of party supposing himself prejudiced thereby.' Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 291, 82 So. 534, 541. Concerning a given charge which allegedly imposed on defendant a duty greater than that required by law, this court said: 'If defendant considered charge 7 to be misleading or not a full statement of the applicable law the remedy was to request explanatory or additional charges. In fact, it seems to us that several of the given charges requested by defendant, and also the oral charge, adequately dealt with the question of plaintiff's duty to exercise reasonable care for her own safety.' First National Bank of Mobile v. Ambrose, 270 Ala. 371, 374, 119 So.2d 18, 21."

Appellant relies on Mobile Infirmary v. Eberlein, 270 Ala. 360, 119 So.2d 8, where it was held to be error to give a charge submitting a question of law to the jury for its determination. In the case now before us the trial court gave requested written charges defining the duty imposed

by law on appellant, and also defined such duty in its oral charge. In *Eberlein* there is no indication that any other instruction, written or oral, was given defining the degree of care placed on the defendant.

## V

Plaintiffs' given charge No. 2 is as follows:

> "The Court charges the Jury that the law requires the highest degree of care, diligence and skill by those engaged in the carriage of passengers for hire, known to careful, diligent and skillful persons engaged in such business, and if you are reasonably satisfied from the evidence in this case that Judy Ann Spitzer was a passenger for hire on the Defendant's bus, and while such a passenger was injured as a direct and proximate consequence of the Defendant's failure to exercise the care and diligence required by law, you must find for the Plaintiff."

Appellant also argues that this charge was erroneously given because it leaves to the jury to determine "the care and diligence required by law" of the defendant. What was said under *IV*, in discussing plaintiffs' given charge No. 4, is also dispositive of this contention.

## VI

Appellant's refused charge No. 33 is involved and tends to confuse. For this reason, aside from any other, it was refused without error.

The judgments appealed from are affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.